SARAH LESHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lesher v. Commissioner
Docket No. 17429-83.
United States Tax Court
T.C. Memo 1987-345; 1987 Tax Ct. Memo LEXIS 345; 53 T.C.M. (CCH) 1333; T.C.M. (RIA) 87345; July 14, 1987
Sarah Lesher, pro se. Dennis D. Curtin, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1980 of $ 2,681 and an addition to tax pursuant to section 6653(a) [1] of $ 134.05. Following concessions by the parties, including concession by respondent of the addition to tax for negligence, the sole issue for our decision *346 is whether petitioner may deduct expenses incurred on a trip through Africa in 1980. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in North Haven, Connecticut at the time the petition was filed in this case. Petitioner filed a U.S. Individual Income Tax Return, Form 1040, for the taxable year 1980, with the Internal Revenue Service Center in Philadelphia, Pennsylvania. During the period from May 16, 1976 through September 15, 1980, petitioner was employed at the Yale University School of Medicine as an associate in Research and a computer programmer. Petitioner's salary was paid out of research grants obtained by her employer, Dr. Lawrence Cohen. In the spring of 1980, petitioner ended an unhappy romance, and decided she did not wish to continue working at Yale. In 1978, petitioner had learned that Bradt Enterprises, a publisher of travel guides, wanted people to supply them with *347 travel information and that they planned to publish a revised edition of Backpacker's Africa. The information received by petitioner from Bradt Enterprises in 1978 stated that in return for contributing articles on new hikes, the contributor would receive "star billing" in the next edition of Backpacker's Africa. In 1980, petitioner contacted Bradt Enterprises and received specifications for submitting articles on new hikes. Petitioner decided to travel to Africa in the fall of 1980, accompanied during the first three weeks of the trip by her father. Petitioner arrived in Kenya on October 8, 1980, traveled through the Sudan, and departed from Egypt to Israel on January 13, 1981 (hereinafter referred to as the "trip"). Petitioner maintained a diary and wrote letters during the trip, but did little other writing. Petitioner incurred total expenses with regard to her trip of $ 4,711. Petitioner remained in Israel during most of 1981 and worked as a computer programmer. Before, during and after the trip, petitioner purchased books on Africa. Petitioner did not, however, have any experience in writing books, novels, short stories, or similar literary pieces prior to her trip. *348 Nor did petitioner do any research or consult any experts on how to collect information for writing on the subject of travel. Petitioner did not obtain any commitments for the publication or sale of anything that she was to write regarding her trip. A new edition of Backpacker's Africa was published by Bradt Enterprises before petitioner submitted any descriptions of new hikes. In 1981, while working as a computer programmer in Israel, petitioner wrote two drafts of a novel which was based on her adventures during the trip. However, nothing that petitioner has written with respect to her trip has been published or sold. Nor has petitioner ever engaged a literary agent or anyone else to market anything that she has written. From 1981 through October 1983, petitioner continued to work as a computer programmer, either in Israel, Africa, or the United States. Beginning in October 1983, and continuing through the spring of 1984, petitioner, then living in the United States, studied foreign languages in the hope that she could again return overseas to work as a computer programmer. Following her study of languages, and having decided she did not wish to return overseas, petitioner *349 attended the University of Maryland to study computer programming. Petitioner did poorly in these courses and, in May 1985, abandoned her studies to devote her full-time efforts to writing and to the drafting of a novel based in Africa. During the years 1980 through 1983, petitioner received approximately $ 10,000 per year in unearned income from her passive investments. During those years, petitioner also received earned income for her services as a computer programmer. During the spring of 1980, petitioner had traveled to Egypt and Israel, but she did not deduct the expenses incurred during that travel on her 1980 Federal income tax return. OPINION The only issue presented is whether petitioner is entitled to deduct the expenses she incurred with respect to her trip to Africa. In order for petitioner to deduct her travel expenses, she must prove that they are properly deductible under either section 162 or 212. Rule 142(a). [2] As relevant to this case, expenses are deductible under those sections only if the activity to which such expenses relate is an activity engaged in for profit. Boyer v. Commissioner,69 T.C. 521, 536 (1977); Benz v. Commissioner,63 T.C. 375, 382 (1974). *350 In making this determination, we look to section 183 and the regulations thereunder. Boyer v. Commissioner, supra.Section 183 provides generally that with respect to an activity not engaged in for profit, deductions are allowable only to the extent of income from such activity. Section 1.183-2 of the regulations lists objective factors which should be used in determining whether an activity is engaged in for profit. The list is not intended to be exclusive and the weight given any particular factor may vary depending on the circumstances. Further, the test to be applied is not one of reasonable intention or expectation, but rather is one of bona fide objective for profit. S. Rept. 91-522 at 104 (1969), 1969-3 C.B. 490; Benz v. Commissioner, supra at 383. The factors which are listed as indicating whether an activity is engaged in for profit, and which are relevant to this case, are as follows: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time *351 and effort expended by the taxpayer in carrying on the activity; (4) the success of the taxpayer in carrying on other similar or dissimilar activities; (5) the taxpayer's history of income or losses with respect to the activity; (6) the amount of occasional profits which are earned; (7) the financial status of the taxpayer; and (8) elements of personal pleasure or recreation. Based on a careful review of the facts of this case in light of the factors listed above, petitioner has clearly failed to prove that her trip to Africa constituted an activity engaged in for profit. In fact, we believe that, while petitioner may well have desired to write successfully and profit therefrom, such a desire was not the basis for her decision to travel to Africa. Prior to her trip, petitioner had no experience writing books, novels, short stories, or similar literary pieces. Further, petitioner failed to research or consult any experts on how to collect information for writing on the subject of travel. These facts are indicative of the degree of petitioner's concern for the profit potential of her trip. Had petitioner been more concerned with recouping the nearly $ 5,000 she spent *352 on her trip, and profiting beyond that amount, she almost certainly would have better prepared herself to collect and organize useful information. [3]
Petitioner did not obtain any commitments for the publication or sale of anything she was to write regarding her trip and nothing that she has written with respect to the trip has been published or sold. While petitioner had obtained information from Bradt Enterprises on submitting descriptions of new hikes for Backpacker's Africa, it does not appear that she ever attempted to submit an article to Bradt for publication. In addition, petitioner appears to have devoted little time to writing while on the trip. Both before and for nearly 3 years after her trip, petitioner's primary occupation was as a computer programmer. Even after she left the last job in which she worked as a programmer, petitioner pursued course work intended to allow her to return to a career in computer programming. Not until May 1985, over 4 years after the trip, did petitioner *353 decide to devote her full-time efforts to writing. This clearly represents a limitation on the time and effort petitioner cold devote to her writing prior to 1985. Petitioner has never engaged a literary agent or anyone else to market anything that she has written. During the years 1980 through 1983, petitioner had substantial income from passive investments and from her employment as a computer programmer. The above facts suggest that, at least until 1985, petitioner's writing endeavors were more in the nature of a hobby than a profit motivated activity. The record also establishes that petitioner's trip was motivated by circumstances unrelated to her interest in writing. Following an unhappy romance, petitioner decided to leave her job and "get away from it all." Thus, petitioner had personal reasons for wanting to travel at the time of this trip. Further, the recreational aspects of such a trip are obvious. Petitioner has failed to establish that her trip to Africa constituted an activity engaged in for profit. Accordingly, petitioner is not entitled to deduct the expenses she incurred on the trip. To reflect concessions of the parties, Decision will be entered *354 under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
2. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. In her testimony, petitioner admitted that had she been better informed prior to her trip, she would have learned to operate a camera and she would have carried a cassette recorder. ↩